**PELTON GRAHAM LLC**
Brent E. Pelton
Taylor B. Graham
Alison L. Mangiatordi
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800
www.PeltonGraham.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **VIMAL BHATT,** | |
| **Plaintiff,** | **COMPLAINT** |
| **-against-** | |
| **LALIT PATEL PHYSICIAN P.C.** and **LALIT P. PATEL, M.D.,** Jointly and Severally, | **Jury Trial Demanded** |
| **Defendants.** | |

Plaintiff Vimal Bhatt ("Bhatt" or the "Plaintiff"), through her undersigned attorneys, Pelton Graham LLC, alleges as follows:

### NATURE OF THE ACTION

1.     Plaintiff worked for Defendants Lalit Patel Physician P.C. and Dr. Lalit Patel (the "Defendants") as a marketing director, office manager and receptionist.

2.     For her work, pursuant to an employment contract, Plaintiff was promised an annual salary of sixty thousand dollars ($60,000), payable monthly, in equal installments of five thousand dollars ($5,000), plus a twenty-five percent (25%) net profit of the business minus her annual salary.

3.    Throughout Plaintiff's employment with Defendants, Plaintiff was not always paid her salary installments, such that she went long periods of time without receiving any wages whatsoever, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 190 and 650 *et seq.*

4.    Plaintiff also never received payment of any net profits of Defendants' business, let alone twenty-five percent (25%) in breach of the employment contract entered into between Plaintiff and Defendants.

5.    In addition to not paying Plaintiff her agreed-upon wages and commissions, Defendants required Plaintiff to work approximately eighty-five (85) hours per week performing non-exempt duties, yet Defendants did not pay Plaintiff overtime premium pay for hours worked in excess of forty (40) in a given workweek at time-and-a-half her regular hourly wage. These practices violated the FLSA and the NYLL, §§ 650 *et seq.*

6.    For such minimum wage and overtime violations, Plaintiff brings unpaid minimum wage and unpaid overtime wage claims under the FLSA and NYLL.

7.    Plaintiff also brings claims for breach of contract under the New York common law for Defendants' failure to comply with the employment contract to pay her salary and commissions. In the alternative, Plaintiff brings claims for *quantum meruit* and unjust enrichment.

8.    Throughout her employment, in order to get paid, Defendant Patel required Plaintiff to have sexual intercourse with him. As such, Plaintiff brings causes of action alleging sex discrimination in employment and, specifically, *quid pro quo* and hostile work environment sexual harassment under §§ 290 *et seq.* of the New York Executive Law ("NYSHRL") and §§ 8-107 *et seq.* of the New York City Administrative Code (the "NYCHRL").

9.    Moreover, Plaintiff brings a claim for fraudulent filing of information returns under 26 U.S. Code § 7434 for Defendants' intentional misclassification of Plaintiff as an independent contractor and filing a 1099-MISC form for the wages Plaintiff earned from Defendants.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §§ 1332 and 1367.

11.    In addition, the Court has jurisdiction over Plaintiff's claim under the FLSA pursuant to 29 U.S.C. § 216(b).

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district and Defendants conduct business within this District.

13.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff:**

14.    Plaintiff Bhatt has been, at all relevant times, an adult individual residing in Kings County, New York.

15.    Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and her written consent form is attached hereto and incorporated by reference.

**Defendants:**

16.    Defendant Lalit Patel Physician, P.C. ("P.C." or the "Corporate Defendant") is an

3

active Domestic Professional Corporation located at 360A 9th Street, Brooklyn, NY 11215.

17.     The P.C. is open Monday through Friday, 7:00 am through 8:00 pm and Saturday and Sunday 7:00 am through 5:00 pm, allows walk-ins, accepts all insurance/no insurance and accepts phone calls 24/7. Patients can receive stress tests, echocardiograms, sonograms, vascular studies, physical examination, blood testing, balance testing and nerve conduction studies at the P.C.

18.     Defendant Lalit P. Patel, M.D. ("Patel" or the "Individual Defendant" and, collectively with the Corporate Defendant, the "Defendants") is licensed doctor practicing Internal Medicine and is an owner and/or officer of Corporate Defendant.

19.     The Individual Defendant has been the owner, director, officer and majority shareholder of Corporate Defendant since its inception, which, according to the New York State Department of State Division of Corporations filing is February 2, 2006.

20.     The Individual Defendant participated in the day-to-day operations of Corporate Defendant and acted intentionally and maliciously in his direction and control of Plaintiff.

21.     The Individual Defendant set Plaintiff's terms and conditions of employment and was responsible for Defendants' failure to pay all required minimum and overtime wages and to pay in accordance with the employment agreement.

22.     The Individual Defendant was directly responsible for the sexual harassment of Plaintiff and the sexual assault and battery on Plaintiff.

23.     Based upon his role directing and controlling Plaintiff, the Individual Defendant is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and as such he is jointly and severally liable with Corporate Defendant.

24.     Upon information and belief, the Individual Defendant was involved in the direct supervision and control of Plaintiff, had the power to hire and fire her, determined the rate and method of her pay and maintained Defendants' payroll records.

25.     At all relevant times, the Corporate Defendant has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

26.     Upon information and belief, at all relevant times, the Corporate Defendant has had gross revenues in excess of $500,000.00.

27.     At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

28.     All actions and omissions described in this complaint were made by Defendants directly or through their supervisory employees and agents.

## STATEMENT OF FACTS

**Defendants' Doctor's Office**

29.     Upon information and belief, Defendants opened Lalit Patel Physician P.C. at 360A 9th Street, Brooklyn, NY 11215 on or about February 15, 2010.

30.     The Individual Defendant is currently the only doctor who works for Lalit Patel Physician P.C.

31.     Patel is an Internal Medicine specialist and is the only doctor who practices at the P.C.

32.     The P.C.'s storefront states on the store front that Patel is a Diplomat of Internal Medicine and a Fellow of American Academy of Cardiology.

33.     The P.C.'s storefront sets forth that the P.C. is open Monday through Friday, 7:00

am through 8:00 pm, Saturday and Sunday 7:00 am through 5:00 pm, walk-ins are welcome, patients without insurance are welcome, and that patients may call 24 hours. Moreover, the P.C. sets forth that they perform stress tests, echocardiograms, sonograms, vascular studies, physical examination, blood testing, balance testing and nerve conduction studies.

34.    The Individual Defendant takes an active role in ensuring that P.C. is run in accordance with his procedures and policies. To that end, Patel sets all employee wages and schedule/hours, supervises the employees, and sets the employees' duties.

**Plaintiff's Work for Defendants**

35.    <u>Plaintiff Bhatt</u> worked for Defendants from in or around April 1, 2010 through in or around January 2016[1] (the "Bhatt Employment Period").

36.    Throughout the Bhatt Employment Period, Plaintiff worked seven (7) days per week: Monday through Friday from seven o'clock in the morning (7:00 am) until eight o'clock in the evening (8:00 pm), and Saturday and Sunday from seven o'clock in the morning (7:00 am) until five o'clock in the evening (5:00 pm), for a total of at least eighty-five (85) hours per week.

37.    In addition to the above office hours, Plaintiff was required to be available twenty-four hours a day, seven days per week (24/7) on her cell phone.

38.    Defendants' business card and store-front provides Plaintiff's cell phone as their "24/7" phone number.

39.    In fact, Defendants advertised the number to the office as Plaintiff's cell phone on the storefront of the P.C., and she was required to pick up any time of day.

40.    Upon information and belief, prior to in or around 2010, Patel and Plaintiff worked with another doctor, Atul Chokshi, M.D ("Chokshi"), a cardiologist.

---

[1] Plaintiff worked continuously except when she was injured and was out for approximately twenty-one (21) days in July of 2012.

41.    Upon information and belief, when Chokshi left the P.C., Plaintiff's duties included reaching out to Choksi's patients in an attempt to recruit them as patients for Patel.

42.    Plaintiff's other duties included advertisement, recruitment of patients, secretarial duties, billing, and client relations.

43.    The Individual Defendant supervised, directed and controlled Plaintiff's work.

The Employment Agreement and Unpaid Wage Claims

44.    At the start of her employment with Defendants, on April 1, 2010, Plaintiff and Defendant Patel signed an employment agreement (the "Employment Agreement"). The Employment Agreement is attached hereto as Exhibit "A."

45.    The Employment Agreement set forth the terms of her employment, including: (1) her weekly hours (i.e., eighty-five (85) hours per week); (2) her pay rate; and (3) her duties.

46.    The Employment Agreement set forth that Bhatt was to receive a base pay rate of sixty-thousand dollars ($60,000) per year, paid out in monthly payments of five thousand dollars ($5,000), plus "25% net profit of the business minus her annual salary after all company's expenses ..."

47.    Defendants, however, did not pay Plaintiff in accordance with this agreement.

48.    Rather, Plaintiff was paid sporadically, and never received twenty-five percent (25%) of the net profit in any of the years she worked for Defendants.

49.    Upon information and belief, throughout the relevant time period, Defendants' net profit was at least three million dollars ($3,000,000) per year.

50.    As such, Plaintiff should have received at least seven-hundred and fifty thousand dollars ($750,000) per year for each year she worked for Defendants in addition to her base salary of sixty thousand dollars ($60,000) per year, for a total of approximately eight hundred

and ten thousand dollars ($810,000) per year.

51.    Rather than receive her wages and commission as promised by Defendants, Plaintiff received a total of approximately $40,000 in 2010, $60,000 in 2011, $35,000 in 2012, $150,000 in 2013, $150,000 in 2014, and $150,000 in 2015.

52.    Plaintiff was not paid on a regular bi-weekly or twice-monthly schedule and was not even paid in accordance with her contract on a monthly schedule. Rather, she was paid sporadically, when she was desperate for the money and asked for it from Defendant Patel, typically every six (6) months.

53.    Since she was not paid on a regular basis, Plaintiff did not receive at least minimum wage for all hours work in a particular workweek in violation of the FLSA and NYLL.

54.    When Plaintiff was paid, she was paid by a company check, without any breakdown of hours worked or wages paid. As such, Plaintiff was not provided with wage statements as required by the New York Labor Law.

55.    While Plaintiff worked a significant amount of overtime, she was not paid time and a half her regular hourly rate for hours worked in excess of forty (40) in a week.

56.    Plaintiff was never given a wage notice as is required by the New York Labor Law.

57.    Defendants failed to maintain accurate records regarding the time worked by Plaintiff.

Fraudulent Tax Filing Claim

58.    In or around January 2011, Defendants formed a company called Vimat Marketing Management LLC and began paying Plaintiff through this company.

59.    Prior to January 2011, Plaintiff was paid as a W-2 employee.

60.    Defendant Patel falsely informed Plaintiff that the reason he formed this company was so that she could get paid money through the company, that they would eventually do marketing for other companies, and that she did not have to worry about how she was paid because it was "both of our money." However, Plaintiff never did work for any other companies, she just continued to work for Defendants in the same capacity.

61.    Upon information and belief, Defendants formed Vimal Marketing Management LLC so that Defendants could avoid paying employer portion of taxes for Plaintiff's wages.

62.    Despite the change by Defendants to pay Plaintiff through Vimat Marketing Management LLC, nothing changed regarding Plaintiff's job duties or requirements imposed by Defendants regarding her work or wages.

63.    While Plaintiff was an employee of Defendants, Defendants paid Plaintiff by 1099-MISC rather than W-2.

64.    Defendants intentionally misreported the wages paid to Plaintiff as non-employee compensation on the 1099-MISC, rather than employee wages, despite the fact that Plaintiff remained an employee of Defendants throughout her employment period.

65.    As a result of Defendants intentional filing of the fraudulent 1099 forms for Plaintiff's wages, Plaintiff was incurred additional tax liability for the portion of taxes that should have been paid by Defendants as Plaintiff's employer.

The Sexual Assault and Gender-Based Harassment Claims

66.    From the beginning of her employment period through in or around February 2012, Plaintiff was in a consensual romantic and sexual relationship with Defendant Patel. During this time, Patel falsely told Plaintiff that he was separated from his wife and was getting a divorce.

67.    When Plaintiff would ask why she was not getting paid what she was promised during this period, Defendant Patel told her that she was working for their future together because he was leaving his wife and going to marry Plaintiff. Therefore, Patel told Plaintiff, her hard work was all for both of them, because they would be together and reap the benefits of the business and the profits together.

68.    Beginning in or around February 2012, however, Plaintiff saw phone records on Patel's phone which made it clear that Defendant was, in fact, still happily married and not planning on leaving his wife due to the fact that he was still having long conversations with her and was not seeing any lawyer or counselor regarding a divorce like he had previously said he was. Plaintiff asked Patel about what she had seen on his phone and, in response, he admitted that he was not divorcing her.

69.    As such, Plaintiff confronted Patel regarding the lies he had been telling her and told him that she was unwilling to have a relationship with him moving forward.

70.    After this, Patel began harassing Plaintiff by putting his hands on her and telling her that if she was not having sex with him, she was "not worth having work there."

71.    On or about March 14, 2012, Plaintiff reiterated to Patel that she was not going to have a relationship with him, but that she was willing to keep working with him because she needed the money and found it difficult to find another job.

72.    However, Patel continued to force Plaintiff to have sex with him and began being violent with her and humiliating her sexually.

73.    After Plaintiff found out that Defendant Patel was still with his wife, Patel asked Plaintiff if she would sign a new employment agreement, but Plaintiff refused.

74.    Throughout Plaintiff's employment with Defendants, Patel never paid Plaintiff

without Plaintiff asking for it.

75.    When Plaintiff would ask for her pay, Defendant Patel would tell her she was "not worth it" and, since February 2012, would force her to have sex with him in order for her to be paid her wages. After which, Patel would pay Plaintiff some amount, but never paid her all of what he owed her.

76.    Defendant Patel forced Plaintiff to have sex with him in order to be paid for her work from in or around February 2012 throughout the remainder of Plaintiff's employment period.

77.    After February 2012, Defendant Patel repeatedly humiliated Plaintiff sexually and forced her to have sex in animalistic ways, against her will.

78.    Defendant Patel would attempt to scare and intimidate Plaintiff throughout her employment.

79.    For example, Patel would tell Plaintiff threatening stories of how other doctors would inject their patients with HIV.

80.    Moreover, on or about October 22, 2015, Patel drove Plaintiff to the Long Island Expressway and forced her to get out of the car on the side of the road. Patel then proceeded to drive away, leaving Plaintiff stranded and without proper attire on the side of the road. Plaintiff was later picked up by an ambulance, who took her to the North Shore LIJ emergency room.

81.    Due to Defendants' sexual assault and gender/sex-based harassment, Plaintiff suffers from severe emotional distress, anxiety, post-traumatic stress, depression, suicidal ideation, feelings of numbness, and other psychological and physical injuries which are continuing.

82.    Due to Defendants' sexual assault and gender/sex-based harassment, Plaintiff quit

working for Defendants in or around January 2016.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE

83.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

84.    By failing to pay minimum wage for all hours worked each week that Plaintiff worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

85.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

86.    Defendants' failure to pay minimum wages for all hours worked caused Plaintiff to suffer loss of wages and interest thereon.  Plaintiff is entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME

87.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

88.    By failing to pay Plaintiff overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

89.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA

within the meaning of 29 U.S.C. § 255(a).

90.    Defendants' failure to pay overtime caused Plaintiff to suffer loss of wages and interest thereon. Plaintiff is entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID MINIMUM WAGE

91.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

92.    Defendants willfully violated Plaintiff's rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

93.    Defendants' failure to pay minimum wage for all hours worked caused Plaintiff to suffer loss of wages and interest thereon. Plaintiff is entitled to recover from Defendants her unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) et al.

## FOURTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID OVERTIME

94.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

95.    During the period of time that Plaintiff was employed by Defendants, she performed work for which she was not compensated in violation of the provisions of the NYLL. Specifically, Defendants violated the NYLL by failing to pay overtime wages for hours worked

over forty (40) to Plaintiff.

96.    Defendants willfully violated Plaintiff's rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) per week, in violation of the NYLL and regulations promulgated thereunder.

97.    Defendants' failure to pay overtime caused Plaintiff to suffer loss of wages and interest thereon. Plaintiff is entitled to recover from Defendants her unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) et al.

### FIFTH CAUSE OF ACTION
### NEW YORK LABOR LAW – WAGE NOTICE VIOLATIONS

98.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

99.    Defendants have willfully failed to supply Plaintiff notice as required by Article 6, § 195, on the date of hire and February 1 of each year, in English or in the language identified by Plaintiff as her primary language, containing Plaintiff's rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

100.    Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants fifty dollars ($50) for each workweek that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000), as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SIXTH CAUSE OF ACTION
## NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS

101.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

102.    Defendants have willfully failed to supply Plaintiff with an accurate statement of wages as required by NYLL, Article 6, § 195, containing Plaintiff's overtime rate or rates of pay if applicable; and an accurate count of the number of hours worked, including overtime hours worked if applicable.

103.    Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants two hundred and fifty dollars ($250.00) for each workweek that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## NEW YORK COMMON LAW – BREACH OF CONTRACT

104.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

105.    Defendants entered into a valid contract with Plaintiff for the payment of her

compensation of $60,000 per year, paid out as $5,000 per month, plus a twenty-five percent (25%) net profit of the business minus her annual salary after all company's expenses.

106.    Plaintiff performed all of the duties required of her pursuant to the contract, but Defendants failed to pay Plaintiff pursuant to the contract.

107.    By failing to compensate Plaintiff pursuant to the contract, Defendants breached said contract.

108.    As a result of Defendants' failure to pay Plaintiff pursuant to the contract, Plaintiff is entitled to relief from Defendants for damages arising out of breach of contract under New York common law of contracts.

## EIGHTH CAUSE OF ACTION
## NEW YORK COMMON LAW – UNJUST ENRICHMENT & *QUANTUM MERUIT*
### (Pled in the Alternative)

109.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

110.    Defendants received the benefit of Plaintiff's hard work and failed to compensate Plaintiff the appropriate amount for her work pursuant to their contract.  Therefore, Defendants has been unjustly enriched at the expense of Plaintiff.  Equity and good conscience require that Defendants pay restitution to Plaintiff.

111.    Defendants agreed to pay Plaintiff her earned compensation and Plaintiff agreed to work in excess of eighty-five (85) hours per week and to be on call 24/7 in accordance with said agreement.

112.    Plaintiff provided valuable services to Defendants by bringing in a significant amount of patients and significantly growing Defendants' business in addition to running Defendants' business for which Plaintiff expected to be compensated for in accordance with the

contract at a base compensation of $60,000 per year, paid out as $5,000 per month, plus a twenty-five percent (25%) net profit of the business minus her annual salary after all company's expenses. Defendants knowingly accepted such services yet failed to pay Plaintiff the reasonable value of such services as agreed upon.

113.    As a result of Defendants' failure to pay Plaintiff the appropriate compensation in accordance with the contract, Plaintiff is entitled to relief from Defendants under New York's common law of unjust enrichment.

114.    As a result of Defendants' failure to pay Plaintiff the reasonable value of the valuable services she rendered, Plaintiff is entitled to relief from Defendants under New York's common law of *quantum meruit.*

## NINTH CAUSE OF ACTION
## NEW YORK COMMON LAW – BREACH OF GOOD FAITH AND FAIR DEALING
### (Pled in the Alternative)

115.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

116.    Defendants' duty of good faith and fair dealing is implied by law and the employer-employee relationship between Defendants and Plaintiff.

117.    The covenant of good faith and fair dealing obligates each party to the contract to refrain from taking any action or litigation position that would deprive the other of the benefits of the contract or cause undue hardship or harm to the other party.

118.    Defendant has breached its duty of good faith and fair dealing to the extent that it has engaged in conduct calculated to further its own economic interests at the expense of Plaintiff.

119.    Defendant has breached its duty of good faith and fair dealing by, among other things, failing to pay Plaintiff the compensation she is entitled to pursuant to the contract with Defendants.

120.    The economic incentives for Defendants to disregard their obligations to act in good faith and deal fairly with Plaintiff include Defendants can retain whatever compensation and profit they fail to pay Plaintiff.

## TENTH CAUSE OF ACTION
## NEW YORK STATE HUMAN RIGHTS LAW – SEX-BASED DISCRIMINATION

121.    Plaintiff repeats, realleges and incorporates by reference the foregoing allegations as if set forth fully and again herein.

122.    The aforesaid conduct of Defendant constitutes willful sex-based discrimination against Plaintiff in violation of the New York State Human Rights Law, N.Y. Executive Law § 290, *et seq.*

123.    Defendants are employers within the meaning of the NYSHRL.

124.    Plaintiff is a member of a protected class.   The harassment and abuse were directed against Plaintiff because she is a woman.

125.    Defendant Patel engaged in sexual harassment, sexual assault, sexual abuse and battery against Plaintiff.

126.    Defendant Patel's conduct created a hostile work environment which was so severe as to alter the conditions of her employment.

127.    Defendant told Plaintiff she was "not worth" her earned compensation and only paid Plaintiff after she had sex with him was sexual harassment, sexual assault, sexual abuse and/or battery and amounted to *quid pro quo* sexual harassment.

128.    The foregoing acts and/or omissions by the Defendants violated the NYSHRL which prohibit sexual discrimination in employment. Defendant's conduct was willful, constituted gross negligence and was intended to bring about the harm to the Plaintiff.

129.    As a result of the unlawful discrimination by Defendants, Plaintiff has suffered substantial money damages, including, but not limited to, loss of wages, loss of future earnings and appreciation thereon.

130.    In addition, as a result of the willful and unlawful discrimination by Defendants, Plaintiff has suffered severe humiliation and mental anguish, psychological, physical and emotional damages and damage to her professional reputation.

131.    As a result of the foregoing actions by the Defendants, Plaintiff has been damaged to her person, property and employment.

132.    As a result of the foregoing, Plaintiff is entitled to backpay with interest and compensatory damages, in an amount to be proved at trial.

## ELEVENTH CAUSE OF ACTION
## NEW YORK CITY HUMAN RIGHTS LAW – GENDER-BASED DISCRIMINATION

133.    Plaintiff repeats, realleges and incorporates by reference the foregoing allegations as if set forth fully and again herein.

134.    The aforesaid conduct of Defendant constitutes willful gender-based discrimination against Plaintiff in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, *et seq.*

135.    Defendants are employers within the meaning of the NYCHRL.

136.    Plaintiff is a member of a protected class.   The harassment and abuse were directed against Plaintiff because she is a woman.

137.   Defendant Patel engaged in sexual harassment, sexual assault, sexual abuse and battery against Plaintiff.

138.   Defendant Patel's conduct created a hostile work environment which was so severe as to alter the conditions of her employment.

139.   Defendant told Plaintiff she was "not worth" her earned compensation and only paid Plaintiff after she had sex with him was sexual harassment, sexual assault, sexual abuse and/or battery and amounted to *quid pro quo* sexual harassment.

140.   The foregoing acts and/or omissions by the Defendants violated the NYCHRL which prohibit sexual discrimination in employment. Defendant's conduct was willful, constituted gross negligence and was intended to bring about the harm to the Plaintiff.

141.   As a result of the unlawful discrimination by Defendants, Plaintiff has suffered substantial money damages, including, but not limited to, loss of wages, loss of future earnings and appreciation thereon.

142.   In addition, as a result of the willful and unlawful discrimination by Defendants, Plaintiff has suffered severe humiliation and mental anguish, psychological, physical and emotional damages and damages to her professional reputation.

143.   As a result of the foregoing actions by the Defendants, Plaintiff has been damaged to her person, property and employment.

144.   As a result of the foregoing, Plaintiff is entitled to backpay with interest and compensatory damages, in an amount to be proved at trial.

## TWELFTH CAUSE OF ACTION
## VICARIOUS LIABILITY

145.   Plaintiff repeats, realleges and incorporates by reference the foregoing allegations as if set forth fully and again herein.

20

146.    Upon information and belief, Defendant Patel is the sole owner of Corporate Defendant and, as such, Corporate Defendant is liable for the wrongful tortious actions of Defendant Patel.

147.    The foregoing actions by Corporate Defendant, among others, caused Plaintiff grave injury and damage to her person, property and employment.

**THIRTEENTH CAUSE OF ACTION**
**FRAUDULENT FILING OF INFORMATION RETURNS**

148.    Plaintiff repeats, realleges and incorporates by reference the foregoing allegations as if set forth fully and again herein.

149.    Defendants filed fraudulent information returns on behalf of Plaintiff Bhatt in violation of 26 U.S. § 7434 by either (i) failing to report all wages paid by Defendants during the relevant tax year, and/or (ii) filing a Form 1099 instead of a Form W2 for wages paid to Plaintiff Bhatt, despite the fact that she was a regular employee, not an independent contractor.

150.    Defendants willfully filed these fraudulent information returns for Plaintiff Bhatt to avoid certain tax obligations.

151.    For Defendants' willful fraudulent filings, Plaintiff is entitled to damages pursuant to 26 U.S. § 7434(b).

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

a.      An order tolling the statute of limitations;

b.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

c.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with

Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d.  An award of compensatory damages as a result of the Defendants' willful failure to pay minimum wages and overtime premium pay pursuant to the FLSA, NYLL and supporting regulations;

e.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime premium pay pursuant to the FLSA, NYLL and supporting regulations;

f.  Fifty dollars ($50) for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, or a total of five thousand dollars ($5,000) as provided for by NYLL, Article 6 § 198(1)-b;

g.  Two Hundred and Fifty dollars ($250.00) for each workweek that the violations of the wage statement provision of the NYLL, Article 6 § 195 occurred or continue to occur, or a total of five thousand dollars ($5,000.00) as provided for by NYLL, Article 6 § 198(1-d);

h.  An award of monetary damages to be proven at trial for all unpaid salary and commission payments withheld from Plaintiff by Defendants in breach of Plaintiff's employment agreement;

i.  An award of compensatory damages in an amount to be shown at trial for past and future economic and non-economic losses, including lost wages, future lost wages, pain and suffering, emotional distress and mental anguish;

j.  An award for exemplary and/or punitive damages in an amount to be shown at trial as a result of Defendants' willful and malicious discriminatory and illegal

conduct;

k.    An award of the greater of statutory damages in the amount of $5,000 or the sum

of any actual damages sustained by Plaintiff as a proximate result of the filing of

the fraudulent information returns (including any costs attributable to resolving

deficiencies asserted as a result of such filing);

l.    An award of prejudgment and post-judgment interest;

m.    An award of costs and expenses of this action together with reasonable attorneys'

and expert fees; and

n.    Such other and further relief as this Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      April 6, 2018

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
Alison L. Mangiatordi (AL 1020)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Dr. Lalit Patel and/or his respective businesses, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me minimum and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____              _____
Signature                                           Printed Name

# EXHIBIT A

# EMPLOYMENT AGREEMENT

This AGREEMENT, entered into this _1__ day of April, 2010, between LALIT PATEL PHYSICIAN, P.C. a New York State Professional Corporation, located at 15,Chaffee Avenue, Albertson, New York,11507 and office currently located @ 360-A,9th street,Brooklyn,NY-11215. ("Company"), and Vimal Bhatt, residing at 1243 60th street, Brooklyn, New York ("Employee"),

## WITNESSETH THAT:

WHEREAS, the parties hereto desire to enter into this Agreement to define and set forth the terms and conditions of the employment of the Employee by the Company;

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth below, it is hereby covenanted and agreed by Company and the Employee as follows:

## 1. EMPLOYMENT

Company shall employ the Employee, and the Employee shall serve Company as a marketing director with and perform the following services:

    a. Shall perform Marketing for the Company;

    b. Perform various office work;

    c. Perform any other tasks and/or assignments that may reasonably be requested by the Company

## 2. DUTIES OF THE EMPLOYEE

    a. During the term of employment, she shall devote her full business time to the business affairs of the Company and shall perform her duties to the best of her abilities.

    b. As part of consideration of entering into this Agreement, that, by use of her marketing strategies and/or techniques, company will produce a total combined gross collection for the first year of ONE MILLION DOLLARS ($1,000,000.00) and every year thereafter a 25% increase in gross collection is expected from the employee.

    c. For valued compensation as stated herein, employee hereby agrees to devote not less than eighty five (85) hours of work for the Company per week.
        i. Employees work hours are as follows:
          (a) Monday-Friday   7:00AM-8:00PM; and
          (b) Saturday-Sunday 7:00AM-5:00PM

    d. Employee is fully responsible for marketing and advertising strategies,

which shall be her sole responsibility.

        i. Marketing and advertising shall be done in such a way as to promote the company and make it more profitable.

**3.**    **TERM**

    The term of this agreement shall be for 5 years, with automatic renewal.  The agreement shall commencing on April 1, 2010, and ending on March 31, 2015. In the event renewal is not desired, notice must be given to the other party in writing no less than thirty (30) days prior to the expiration of this Agreement.

    This Agreement may also be terminated by either party in accordance with Section 9 herein.

**4.**    **COMPENSATION**

    Subject to the following provisions of this Agreement, during the Employment Period the Employee shall be compensated for her services as follows:

    (a) She shall receive an annual salary of SIXTY THOUSAND DOLLARS ($60,000.00), which shall be payable monthly, in equal installments of FIVE THOUSAND DOLLARS ($5,000.00).  This schedule may be amended from time to time in writing by the Company.

    (b) Employee shall be entitled to a 25% net profit of the business minus her annual salary after all company's expenses including wages, employees benefits, fixed and variable expenses and taxes or any companys liabilities in current and in future.

        i. During the first year the above referenced commission is to be paid to employee at the end of the year.

        ii. After the first year, employee is entitled to collection her commission, which is anything that is above her annual salary as follows:

            (1) 30% of commission is to be paid by the end of the sixth month of the year.

            (2) 70% of commission to be paid at the end of the year after the company has had a chance to file taxes.

    (c) Employee is to receive three (3) weeks vacation only after the first two years of work, commencing in the third year.

**5.**    **DISABILITY**

    Subject to the provisions of paragraph 9, if the Employee's employment is terminated during the Employment Period by reason of her Disability (as defined below), the Employee shall continue to receive an annual salary and benefits in accordance with paragraph 4 through the end of the second full calendar month of such disability but not in any event beyond the end of the Employment Period. For purposes of this Agreement the term "Disability" means a physical or mental disability which renders the Employee incapable of performing her duties under this Agreement and which disability has existed

for at least sixty (60) days, as determined by an independent physician selected by Company and agreed to by the Employee. Any salary payments to the Employee shall be reduced by the amount of any benefits paid for the same period of time under Company's disability insurance programs.

## 6.    NON-COMPETE

During the period of her employment under this Agreement, the Employee shall not be employed by or otherwise engage in or be interested in any business in competition with the Company, or with any of its subsidiaries or affiliates.

Employee hereby agrees with the Company that during the term of employment and for a period of one (1) year following the date of termination or non-renewal, it shall not:

a.  Compete with Company and its successors and assigns:

    i.   The term "non compete" as used herein shall mean that the Employee shall not, without prior written consent from the Company:

        (1) serve as a partner, employee, consultant, officer, director, manager, agent, associate, investor, or otherwise for,

        (2) directly or indirectly, own, purchase, organize or take preparatory steps for the organization of, or

        (3) build, design, finance, acquire, lease operate, manage, invest in, work or consult for or otherwise affiliate with, any business in competition with or otherwise similar to Company's business.

        (4) Induce or attempt to induce any client, customer, supplier, licensee or other individual, corporation or other organization having a business relationship with the Company or its subsidiaries or affiliates to cease doing business relation with the Company or its subsidiaries or in any way interfere with the relationship between any such customer, supplier, licensee or other person and Company or its subsidiaries or affiliates.

        (5) This Section shall cover Employee's activities in every part of the Territory in which the Employee works during the term of this Agreement.

        (6) Territory shall include all counties in the State of New York where the Company presently conducts business or will conduct business in future during Employee's employment with the Company.

## 7.    CONFIDENTIALITY

During and after the Employment Period, the Employee will not divulge or appropriate to her own use or to the use of others, in competition with the Company, any secret or confidential information or knowledge pertaining to the business of the Company, or of any of its subsidiaries, obtained by him/her in any way while he was employed by the Company or by any of its subsidiaries.

## 8.     REMEDIES

If at any time the Employee violates to a material extent any of the covenants or agreements set forth in paragraphs 6 and 7, Company shall have the right to terminate all of its obligations to make further payments under this Agreement. The Employee acknowledges that Company would be irreparably injured by a violation of paragraph 6 or 7 and agrees that Company shall be entitled to an injunction restraining the Employee from any actual or threatened breach of paragraph 6 or 7 or to any other appropriate equitable remedy without any bond or other security being required.

## 9.     AMENDMENTS AND TERMINATION

This Agreement may be amended or cancelled by mutual, written agreement of the parties without the consent of any other persons.  This Agreement may also be terminated for any of the following reasons:

1. Breach of any section this Agreement by Employee;

2. Repeated violations by Employee after being warned by President or CEO of the Company  of such violations.

3.Employees failure, refusal or neglect to perform her duties.

4.For any reason upon giving the other party thirty (30) day written notice.

   i. If termination is by Employer with no good cause shown, employee is entitled to receive her 25% commission as indicated in paragraph 4 above for the entire year preceding termination.

   ii. If termination is by Employee with no good cause shown, Employee must return to Employer her full year earning that she received for the entire year preceding termination together with any bonuses that may have been paid.

## 10.    NOTICES

Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and if sent by registered mail to the Company at its principal executive offices or to the Employee at the last address filed by him in writing with the Company, as the case may be.

## 11.    NON-ASSIGNMENT

The interests of the Employee under this Agreement are not subject to the claims of her creditors and may not be voluntarily or involuntarily assigned, alienated or encumbered.

**12.    APPLICABLE LAWS**

The provisions of this Agreement shall be construed in accordance with the laws of the State of New York.

**13.    SEVERABILITY**

If one or more of the provisions in this Agreement are deemed void by law, including, but not limited to, the covenant not to compete, then the remaining provisions will continue in full force and effect.

IN WITNESS WHEREOF, the Employee has hereunto set her hand, and Company has caused these presents to be executed in its name and on its behalf, all as of the day and year first above written.

**LALIT PATEL PHYSICIAN, P.C.**

By:_____

Dr. Lalit Patel ( President )

**EMPLOYEE**

By:_____

Vimal Bhatt