# PELTON GRAHAM LLC

ADVOCATES FOR JUSTICE

Alison L. Mangiatordi, Esq.<br>Mangiatordi@PeltonGraham.com

March 31, 2021

**VIA CM/ECF**

Magistrate Judge Sanket J. Bulsara
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *Vimal Bhatt v. Lalit Patel Physician P.C., et al.*, No. 18-cv-2063 (ILG)(SJB)
      **Plaintiff's Motion for a Protective Order and Sanctions Due to Witness Tampering**

Dear Judge Bulsara:

This firm represents Vimal Bhatt ("Bhatt" or the "Plaintiff") in the above-referenced action. We write in accordance with Your Honor's Individual Rule IV.B and Local Civil Rule 37.3 to respectfully request that the Court grant a protective order prohibiting Defendant Lalit P. Patel, M.D. ("Dr. Patel") from communicating with non-party witnesses in this matter due to a disturbing pattern of Dr. Patel (and potentially Defendants' counsel)[1] threatening and/or misleading witnesses who have signed declarations in support of Plaintiff. Counsel for the parties met and conferred regarding this issue for approximately thirty (30) minutes by telephone on Monday, March 29, 2021, as well as via email on March 30, 2021. Defendants' counsel admits that Dr. Patel has reached out to the witnesses, but says he has no knowledge of the threats or misleading statements which Plaintiff alleges. As detailed below, Dr. Patel's attempts to tamper with non-party witnesses is interfering with the discovery process and should be disallowed.

**I.   Defendants Have Threatened or Misled a Number of Witnesses to Disappear or Retract Their Sworn Statements**

There has been a clear pattern of witness intimidation by Defendant Dr. Patel in this case. Almost immediately after Plaintiff produced a declaration or letter by a number of witnesses in support of her allegations in the instant case, Dr. Patel called and threatened and/or intimidated them into either retracting all or a portion of the letter or declaration in support, or simply disappearing.

For example, shortly after our office produced a signed declaration in support of Plaintiff from Charleen Croom ("Ms. Croom"), Dr. Patel's former patient (*see* Ex. A, Declaration of Ms. Croom),[2] Dr. Patel called Ms. Croom a number of times, several of which she did not answer. (*See*

---

[1] Defendants' counsel would not confirm whether or not he was on the phone calls with Dr. Patel to the witnesses, as was inferred by one of the witnesses.
[2] All exhibits referenced are attached to the Affirmation of Alison L. Mangiatordi.

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

Case 1:18-cv-02063-DLI-SJB   Document 97   Filed 03/31/21   Page 2 of 5 PageID #: 1446

Magistrate Judge Sanket J. Bulsara
Plaintiff's Motion for a Protective Order and Sanctions Due to Witness Tampering
Page **2** of **5**

Affirmation of Alison L. Mangiatordi ("Mangiatordi Aff.") at ¶ 5; Ex. M – Declaration of Vimal Bhatt ("Bhatt Decl.") at ¶ 5). On the telephone call that she did pick up, Dr. Patel was very angry and told Ms. Croom that she "lied" about her last day of treatment being in 2013, because he claimed to have records that she remained a patient until 2016. (Mangiatordi Aff. at ¶ 7; Ex. M at ¶ 6). Dr. Patel told Ms. Croom that based on this "lie," he was going to sue her if she did not retract her statement. (*See* Ex. M at ¶ 6). After recounting this to Plaintiff and Plaintiff's counsel, Ms. Croom decided she no longer wants to participate in the case because she is afraid that Dr. Patel is going to sue her. (*Id*. at ¶ 8). Having been unsuccessful in getting her to "retract" her declaration, Defendants now seek Ms. Croom's deposition through a subpoena. (*See* Ex. B (Email from Edward Hopkins); Ex. C (Subpoena to Ms. Croom)).

Similarly, hours after Plaintiff's counsel produced a signed declaration from Rosie Lee Williams-Langaigne ("Ms. Williams-Langaigne"), a seventy (70) year-old current patient of Dr. Patel's, (*see* Ex. D, Declaration of Ms. Williams-Langaigne), Dr. Patel called her with whom she believed to be Defendants' counsel on the line. (*See* Ex. F –Transcript of Conversation with Ms. Williams-Langaigne)). On this phone call, Dr. Patel and someone who she believed to be Defendants' counsel, confused and misled Ms. Williams-Langaigne into thinking that the statements in her declaration were either incorrect or "taken out of context" and not relevant to the issues in the lawsuit. (*Id.*). As a result of this confusion, Ms. Williams-Langaigne agreed to sign a statement typed by Dr. Patel or Defendants' counsel, even though she maintains that the statements in her initial declaration are true and accurate to the best of her recollection. (*Id.*; Ex. E - Letter Signed by Ms. Williams-Langaigne).

Likewise, shortly after Plaintiffs' counsel produced a signed declaration from Hazel Brooks ("Ms. Brooks"), a current patient of Dr. Patel's, Ms. Brooks sent an email to Plaintiff's counsel with Dr. Patel cc'd asking to change or retract certain portions of her declaration. (*See* Ex. G - Declaration of Ms. Brooks and Ex. H - Letter Signed by Ms. Brooks). By the same token, shortly after Plaintiff produced a letter of recommendation for Plaintiff by Jennilyn Baptiste ("Ms. Baptiste"), which she agreed to produce in this litigation (*see* Ex. I - First Letter by Ms. Baptiste), Ms. Baptiste emailed Plaintiff's counsel a letter retracting her Letter of Recommendation, cc-ing Dr. Patel. (*See* Ex. J - Second Letter by Ms. Baptiste). Finally, as the Court is aware, Dorlisa Urbaez ("Ms. Urbaez"), a former employee of Defendants, signed a declaration in support of Plaintiff on October 1, 2018, yet later refused to sit for a deposition resulting in her declaration being stricken. (Ex. K – Declaration of Ms. Urbaez; Order of the Court dated December 9, 2020). Ms. Urbaez was worried about harassment by Dr. Patel and concerned that she would be arrested for refusing to go to court and face Dr. Patel. (*See* Ex. L – Test Messages between Ms. Bhatt and Ms. Urbaez).

II.     **Legal Standard**

"[P]rotective orders are an appropriate vehicle to prevent interference with potential witnesses." *Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics, Inc*., 2011 U.S. Dist. LEXIS 121426, at *13-15 (D. Mass. Oct. 20, 2011, No. 11-10791-MLW]) (citing *Disability Rights New Jersey, Inc. v. Velez*, 2011 U.S. Dist. LEXIS 78333, at *4 (D.N.J. July 19, 2011, No. 10-3950(DRD)) (discussing *Ben David v. Travisono*, 495 F.2d 562, 564 (1st Cir. 1974) (protective

Case 1:18-cv-02063-DLI-SJB   Document 97   Filed 03/31/21   Page 3 of 5 PageID #: 1447

Magistrate Judge Sanket J. Bulsara
Plaintiff's Motion for a Protective Order and Sanctions Due to Witness Tampering
Page **3** of **5**

order prohibiting witness intimidation appropriate upon a finding "that the plaintiffs reasonably fear retaliation and that the court's fact-finding may be materially impaired unless there is provided the tangible protection of a suitable court order.")). A protective order prohibiting dissemination of the identify and location of a cooperating witness may be warranted when there is a high risk of witness tampering. *See United States v. Basciano*, 2007 U.S. Dist. LEXIS 93253, at *14 (E.D.N.Y. Dec. 19, 2007, Nos. 03-CR-929 (NGG), 05-CR-060 (NGG)); *Fazio v. United States*, 2017 U.S. Dist. LEXIS 155364, at *3 (S.D.N.Y. Sep. 22, 2017, No. 16-cv-8529) (recounting that where there was a charge of obstruction of justice relating to witness tampering, the Court issued a Protective Order enjoining defendant from contacting certain witnesses unless their counsel was/were present). Furthermore, protective orders are appropriate where there is reason to believe that a witness would be subject to physical or economic harm. *United States v. Jackson*, 2003 U.S. Dist. LEXIS 24877, at *11 (S.D.N.Y. Aug. 27, 2003).

"[A] protective order may be issued 'for good cause' to 'protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Velez*, 2011 U.S. Dist. LEXIS 78333, 2011 WL 2937355, at *10 (citing Fed. R. Civ. P. 26(c))); *Allstate Ins. Co. v. All County, LLC*, 2020 U.S. Dist. LEXIS 176297, at *3 (E.D.N.Y. Sep. 22, 2020, No. 19-CV-7121 (FWK)(SJB) (citing Def. R. Civ. P. 26(c)). In determining whether "good cause" exists for a protective order, courts look at a number of factors, including the following: (1) evidence of annoyance, embarrassment, oppression, or undue burden or expense; (2) how central (or tangential) the evidence sought in relation to the central issues in the litigation; (3) the importance of the issues in the litigation to the public; (4) the parties' stakes in the outcome of the litigation; (5) whether the evidence sought is available from other sources; and (6) whether discovery of the evidence can be conditioned on terms that would alleviate the hardship in producing it." *In re Initial Pub. Offering Sec. Litig*. 220 F.R.D. 30, 36 (S.D.N.Y. 2003).

A court should "exercise its inherent equitable powers to ensure full and fair proceedings" by issuing a protective order where there are "allegations of interference with witnesses." *Rissman*, 2011 U.S. Dist. LEXIS 121426, at *13-15 (granting a protective order that defendant "shall not communicate personally with, or cause a third party … to communicate on his behalf" with the witnesses). The court has discretion to make decisions regarding cooperating witnesses in order to protect the witness's safety. *Basciano*, 2007 U.S. Dist. at 14 (citing *United States v. Cannone*, 528 F.2d 296, 201 (2d Cir. 1975) and *United States v. Garcia*, 406 F. Supp. 2d 304, 306 (S.D.N.Y. 2005) (concluding that it is appropriate in a case where a witness may face retaliation or intimidation to restrict circulation of witness statements and reports)). "[A]llegations that [defendants] have threatened the [] witnesses not to testify in the [] litigation are unsettling, in that such conduct implicates both witness tampering and possible spoliation of Plaintiff's evidence. Certainly such conduct has no place in this litigation, and if proven, would merit serious sanction." *Adams v. Naphcare, Inc.*, 2016 US Dist. LEXIS 195066, at *49 (E.D. Va. July 25, 2016, No. 2:16-cv-229). Further, an order directing personnel to not retaliate against witnesses for participation in a lawsuit is appropriate "should sufficient findings be made that the [] witnesses reasonably fear retaliation, and that the court's fact-finding may be materially impaired unless a protective order is entered." *Id*. at *34.

Case 1:18-cv-02063-DLI-SJB   Document 97   Filed 03/31/21   Page 4 of 5 PageID #: 1448

Magistrate Judge Sanket J. Bulsara
Plaintiff's Motion for a Protective Order and Sanctions Due to Witness Tampering
Page **4** of **5**

In addition, the Court has inherent power to impose sanctions on Defendants based on the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases by punishing and deterring abuses of the judicial process. *See Bryant v. City of Hartford*, 2020 U.S. Dist. LEXIS 116486, at *16-17 (D. Conn. July 2, 2020, No. 3:17-cv-1374 (VAB)) (internal citations omitted); *Chambers v. NASCO, Inc*. 501 U.S. 32, 43-45 (1991); *United States ex rel. O'Keefe v. McDonnell-Douglas Corp*., 961 F. Supp. 1288 (E.D. Mo. 1997), aff'd 132 F.3d 1252 (8th Cir. 1998). Sanctions are appropriate where defendants implement abusive litigation practices, such as witness tampering. *See Bryant*, 2020 U.S. Dist. LEXIS 116486, at *16 (citations omitted); *U.S. v. Jones*, 466 So.2d 292 (Fla. Dist. Ct. App. 1985) (granting request for sanctions where defendant told a witness to fraudulently claim not to remember certain events). The decision whether to impose sanctions is ultimately in the Court's discretion. *Shanchun Yu v. Diguojjaoyu, Inc*. 2019 U.S. Dist. LEXIS 201808, at *11 (S.D.N.Y. Nov. 20, 2019, No. 18-cv-7303 (JMF)) (awarding sanctions of the reasonable attorneys' fees for costs incurred in making a motion). "[T]o warrant an award of attorney's fees pursuant to the Court's inherent authority, the Court must find that the lawyer or party being sanctioned acted in bad faith…." *Id.* "[I]ntentional behavior, actions taken in bad faith, or grossly negligent behavior justify severe disciplinary sanctions." *Id.* (quoting *Borsanvi v. Huggins*, 2019 U.S. Dist. LEXIS 173926, 2019 WL 4911188, at *6 (E.D.N.Y. Sept. 30, 2019)).

### III.  The Egregious Allegations of Witness Tampering Warrant a Protective Order and Sanctions

Good cause exists to grant a protective order in this matter. Balancing the interests of the parties and looking to the factors set forth *In Re Initial Pub. Offering*, 220 F.R.D. at 36, there is (1) clear evidence of annoyance, embarrassment, oppression, or undue burden or expense in that Defendant has threatened to sue a witness and misled others into withdrawing truthful portions of their declarations; (2) preservation of witnesses of the dates of Plaintiff's employment and the relationship between the parties is central to the issues in this litigation; (3) the issues at stake in this litigation (i.e., unpaid wages and sexual harassment) are important to the public's interest in fairness in the workplace; (4) the parties' reputation and finances are at stakes in the outcome of the litigation; and perhaps most importantly (5/6) rather than reach out to witnesses informally, Defendants' counsel has the ability to take their deposition and cross-examine them, thus there would be no prejudice to Defendants if the Court were to grant a protective order.

While Defendants would typically be entitled to communicate with witnesses, it is criminal to threaten and mislead witnesses for their participation in a lawsuit. 18 U.S.C. § 1512(b) sets forth that it is a federal offense to: (1) knowingly intimidate, threaten or corruptly persuade another person, or attempt to do so, or engage "in misleading conduct toward another person, with intent to influence, delay or prevent the testimony of another person in an official proceeding"; or (2)(A) "cause or induce any person to withhold testimony…from an official proceeding." In the criminal context under 18 U.C.S. § 1514(b)(1) "the court can issue a protective order if the government proves by a preponderance of the evidence either (1) that harassment of an identified victim or witness exists or (2) that such order is necessary to prevent and restrain an offense under 18 U.S.C. § 1512(b)(1). *United States v. Carmichael*, 326 F. Supp. 1267, 1270 (M.D. Ala. 2004).

Case 1:18-cv-02063-DLI-SJB   Document 97   Filed 03/31/21   Page 5 of 5 PageID #: 1449

Magistrate Judge Sanket J. Bulsara
Plaintiff's Motion for a Protective Order and Sanctions Due to Witness Tampering
Page **5** of **5**

Due to the extremely serious allegations herein and the lack of prejudice to Defendants if the motion is granted, Plaintiff respectfully requests that the Court grant an order of protection prohibiting Dr. Patel from communicating personally with, or causing a third party to communicate with, Plaintiff's witnesses on his behalf, with an exception for communications for the sole purpose of treating any witness that is a current patient of Dr. Patel. Moreover, Plaintiff seeks that the Court impose sanctions on Defendants including reasonable attorneys' fees incurred in connection with this motion due to Defendants' bad faith as set forth herein and the irreparable injury Defendants' behavior has caused to Plaintiff and to the fairness of the discovery process.

We appreciate Your Honor's attention to this matter.

Respectfully submitted,

*/s/ Alison L. Mangiatordi*

Alison L. Mangiatordi, Esq. of
PELTON GRAHAM LLC

Encl.

cc:   All counsel (via ECF)